UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE ANN BRITTON, | ) | Case No. 1:19CV0668 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Christine Ann Britton ("Britton" or "claimant") challenges the final decision of

Defendant Commissioner of Social Security ("Commissioner"), denying her applications for a

period of disability ("POD") and disability insurance benefits ("DIB") under Title II of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.* ("Act").  This court has jurisdiction pursuant to 42

U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to

an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  The issue

before the court is whether the final decision of the Commissioner is supported by substantial

evidence and, therefore, conclusive.  For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be Reversed and Remanded.

## I.  PROCEDURAL HISTORY

On April 14, 2016, Britton protectively filed an application for a POD  and DIB, alleging

disability beginning March 23, 2016.  (R. 11, Transcript ("tr."), at 11, 197-200, 222-223, 224-

233.)  Britton's application was denied initially and upon reconsideration.  (R. 11, tr., at 103-115,

116-131.)  Thereafter, Britton filed a request for a hearing before an administrative law judge.
(R. 11, tr., at 150-151.)

An Administrative Law Judge ("the ALJ") held the hearing on April 11, 2018.  (R. 11, tr.,
at 62-101.)  Britton appeared at the hearing, was represented by counsel, and testified.  (*Id.* at 64,
68-89.)  A vocational expert ("VE") also attended the hearing via telephone and provided
testimony.  (*Id.* at 65, 90-99.)

On June 4, 2018, the ALJ issued his decision, applying the standard five-step sequential
analysis to determine whether Britton was disabled.  (R. 11, tr., at 11-21; *see generally* 20 C.F.R.
§ 404.1520(a).)  Based on his review, the ALJ concluded Britton was not disabled.  *Id.* at 21.
The Appeals Council denied Britton's request for review, thus rendering the ALJ's decision the
final decision of the Commissioner.  (R. 11, tr., at 1-4.)

On March 26, 2019, Britton filed a complaint challenging the Commissioner's final
decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.
Britton presents three legal issues for the court's review, asserting the ALJ erred when assessing
treating source opinions, Britton's credibility and when finding that she could return to her past
job as a hospital admitting clerk/patient representative.  (R. 13, PageID #: 743.)

## II.  PERSONAL BACKGROUND INFORMATION

Britton was born in 1966, and was 49 years old on the alleged disability onset date.  (R.
11, tr., at 197, 222.)  Accordingly, she was considered a younger individual age 18-49 for Social
Security purposes.  *See* 20 C.F.R. § 404.1563.  Britton has at least a high school education, and is
able to communicate in English.  (R. 11, tr., at 224, 226.)  She has past relevant work as cafeteria

2

attendant, cafeteria cook, certified nurses' aide, patient representative, medical assistant/office

manager, and LPN.  (R. 11, tr., at 92-94.)

### III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Britton's brief alleging error by the

ALJ.  As noted earlier, Britton applied for disability benefits on April 14, 2016, alleging

disability beginning March 23, 2016.  (R. 11, tr., at 11, 197-200.)  Britton listed her physical or

mental conditions that limit her ability to work as: "Back pain, neuropathy, NIDDM, depression,

hyperlipidemia, fatigue, hyperthyroidism."  (R. 11, tr., at 225.)

On March 5, 2015, Britton presented for a new patient visit with Scot D. Miller, D.O., of

Crystal Clinic Orthopaedic Center.  (R. 11, tr., at 289-295.)  Britton reported a medical history of

diabetes (non-insulin) and a thyroid disorder.  *Id.* at 289.  She reported having had a

hysterectomy; and complained of muscoloskeletal weakness and pain, specifically low back

pain.  *Id.* at 289, 291.  She reported pain radiating down her right leg.  *Id.* at 291.  Although

Britton walked without difficulty, the doctor observed an antalgic gain on the right.  *Id.* at 292.

Dr. Miller noted lumbar range of motion was limited and painful.  *Id.* at 292-293.

Dr. Miller assessed Britton with spondylolisthesis, degenerative in nature,  and

degenerative disc disease of lumbar/sacrum.  (R. 11., tr., at 294; *see also* tr., at 296 (MRI).)  The

doctor recommended surgery to include hemilaminectomy, micro discectomy, and

decompression.  *Id.*

---

[1]  The summary of relevant medical evidence is not intended to be exhaustive.  It includes only
those portions of the record cited by the parties and also deemed relevant by the court to the
assignments of error raised.

Britton presented for a psychological consultation with clinical neuropsychologist Joshua Magleby, Ph.D., on May 19, 2016.  (R. 11., tr., at 369-374.)  Dr. Magleby conducted an hour-long complete mental status exam and history.  *Id.* at 369.  No psychological testing was conducted, and no "collateral information" had been provided to the psychologist.  *Id.*  Dr. Magleby noted that claimant's primary allegation involved back and leg pain, which she alleged prevented her from working at her job.  *Id.*  Britton reported a longstanding history of back pain, with neuropathy in her left leg, and increased pain since her 2015 back surgery.  *Id.* at 370.  The claimant reported she had been diagnosed with depression ten years earlier, with symptoms beginning in 2004.  *Id.*  The psychologist noted that claimant was "mostly capable with independent activities of daily living."  *Id.* at 371.  "Limitations or restrictions due primarily to psychiatric conditions are mild."  *Id.*

The mental status exam was mostly unremarkable.  (R. 11., tr., at 371.)  Britton's "[t]hought content was linear, future oriented, without loosening, irrationality or confabulation."  *Id.* at 371.  Her ability to communicate and level of conversation appeared average.  *Id.* at 371-372.  The claimant's ability to understand and comprehend simple language as well as more complex directions and language was good.  *Id.* at 372.  Britton's symptoms of depression, however, were moderate to severe, although her mood during the exam was stable, without anxiety or depression.  *Id.*  Her response to simple directions, and her task engagement and effort were normal.  *Id.*  Britton's simple computation skills were poor, her reasoning and mental processing speed were fairly average, and her general fund of information was fair.  *Id.*  There were no clear symptoms of attention deficits, and her intelligence was estimated to be average to low average.  *Id.*  Her judgment and insight were assessed as fair.  *Id.* at 373.

Dr. Magleby's DSM-5 Diagnostic Impressions were 300.4 Persistent Depressive Disorder, moderate, and 309.9 Adjustment Disorder Unspecified. (R. 11., tr., at 373.) Dr. Magleby concluded that Britten's intellect appears average to low average, her memory was commensurate with intelligence, and adaptive behavior was estimated to be average. *Id.* Literacy skills were not measured. *Id.* The psychologist's prognosis, given claimant's history and presentation, was that "improvement to current levels of functioning is unlikely as symptoms have remained fairly static." *Id.* Her symptoms "appear to be chronic." *Id.*

Dr. Magleby's functional assessment was that Britton's ability to understand, remember, and carry out simple or complex instructions was average, her comprehension was good, and memory appeared average. (R. 11, tr., at 373.) Her ability to maintain attention and pace, and the ability to perform simple or multi-step tasks appeared fairly average. *Id.* at 374. The claimant's ability to relate to others, such as peers or supervisors, was appropriate. *Id.*

Dr. Magleby opined that claimant's ability to withstand the mental stress and pressures of daily work activity, based on her "current mental complaints on this exam, psychiatric history and estimated adaptive behaviors," appears somewhat impaired, by persistent depression. (R. 11, tr., at 374.)

State agency psychological consultant Kathleen Malloy, Ph.D., completed a psychological assessment for Britton on May 23, 2016. (R. 11, tr., at 107-108.) Dr. Malloy found that claimant had a non-severe affective disorder that caused mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. *Id.* at 108.

5

On May 27, 2016, Britton presented to Amy Sadler, M.D., of Rittman Family Practice, complaining of depression.  (R. 11, tr., at 383.)  She also complained that back pain was limiting her sleep.  *Id.* at 383, 386.  The doctor noted a past medical history including, *inter alia*, malaise and fatigue, depression, obesity, diabetes  mellitus, and low back pain.  *Id.* at 384.  Britton had back surgery in April 2015.  *Id.*  Dr. Sadler diagnosed depression and left-sided low back pain with sciatica.  *Id.* at 387.

An MRI of the lumbar spine was done on May 27 to examine post lumbar spinal fusion. *Id.* at 395.  The imaging showed post-surgical changes from L3 through L5/S1, with significant right-sided foraminal stenosis at L5/S1, with disc protrusion and endplate spurring.  *Id.* at 397. Subsequent CT lumbar spine imaging on June 15, 2016, also showed degenerative changes of the lumbar spine with associated foraminal stenosis on the right at L5/S1 and on the left at L3/L4. *Id.* at 391.

On August 3, 2016, Dr. Sadler[2] completed a "Medical Opinion Re: Ability to do Work-Related Activities (Physical)."  (R. 11, tr., at 410-413.)  Dr. Sadler indicated that claimant could lift up to ten pounds occasionally, and less than ten pounds frequently.  *Id.* at 410.  The claimant would be able to stand and walk less than two hours of an 8-hour workday.  *Id.*  She would also be able to sit less than two hours of an 8-hour workday.  *Id.* at 411.  The doctor indicated that Britton could sit or stand for 15 minutes before changing position, and must walk around for ten

---

[2] The ALJ found the signature on the August 2016 form to be "illegible."  (R. 11, tr., at 18.) However, the form was addressed to Rittman Family Practice.  (R. 11, tr., at 410.)  At the relevant time, Britton was treating with Dr. Sadler at Rittman.  *See, e.g.*, tr., at 383, 387-388, 400-402 (MER dated May-June 2016).  The court reads the signature to be that of Dr. Sadler. *See* R. 11, tr., at 413.  See fuller discussion below.

6

minutes every fifteen minutes.  *Id.*  The claimant would need to be able to shift at will from sitting or standing, and would need to lie down every three hours.  *Id.*  Dr. Sadler stated that the claimant would be unable to remain in one position due to back pain, the symptoms of which were not resolved by surgery.  *Id.*

Dr. Sadler indicated that claimant could occasionally stoop, crouch, and climb stairs or ladders.  (R. 11, tr., at 412.)  Due to Britton's back pain, she would not be able to push or pull without significant distress.  *Id.*  Dr. Sadler assessed no environmental restrictions.  *Id.*  The doctor opined that, due to claimant's back pain, she would need the unrestricted ability to change positions at work, with the ability to walk around if needed.  *Id.* at 412-413.  Dr. Sadler anticipated that claimant's impairments would cause her to be absent from work about three times a month.  *Id.* at 413.

State agency medical consultant Dimitri Teague, M.D., completed a physical residual functional capacity assessment for Britton on June 23, 2016.  (R. 11, tr., at 110-112.)  Dr. Teague assessed a range of light exertion, with the ability to stand or walk for about six hours, and to sit for about six hours, of an 8-hour workday.  (R. 11, tr., at 110.)  She can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  *Id.*  The claimant can frequently stoop, kneel, crouch, or crawl.  *Id.* at 110-111.  Dr. Teague noted that Britton had disc fusion; she should avoid postural positions that may cause pain, and should avoid climbing ladders and scaffolds for this reason.  *Id.* at 111.  Dr. Teague did not assess any manipulative, visual, or communicative limitations, but noted that Britton must avoid concentrated exposure to hazards, such as heights and heavy equipment.  *Id.*

On reconsideration dated September 19, 2016, state agency psychological consultant Karla Delcour, Ph.D., concurred that Britton's psychological impairment is not severe, and adopted the identical limitations identified by Dr. Malloy. (R. 11, tr., at 122-123.) State agency medical consultant Maureen Gallagher, D.O., M.P.H., completed a physical RFC assessment for Britton on September 26, 2016. *Id.* at 124-126. Dr. Gallagher adopted the identical limitations identified by Dr. Teague. *Id.*

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his June 4, 2018, decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021 (Exhibit 6D).

2. The claimant has not engaged in substantial gainful activity since March 23, 2016, the alleged onset date (20 C.F.R. 404.1571 *et seq.*) (Exhibits 2D-9D, 2E and 9E).

3. The claimant has the following severe impairments: Post-laminectomy syndrome, degenerative changes, right-sided foraminal stenosis and dextroscoliosis to lumbar spine with radiculopathy and left-sided sciatica; bilateral sacroilitis; and obesity (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526) (Exhibits 1F, 3F-5F, 7F, and 10F-18F).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with limitations as follows: The claimant needs the ability to alternate positions between sitting and standing approximately every one hour, but would remain at the work station and would be off task less than 10% of the work day; can occasionally push, pull, and operate foot controls with the bilateral lower extremities; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch [or] crawl;

and must avoid all exposure to hazards such as unprotected heights, moving mechanical parts, and the operation of motor vehicles.

6. The claimant is capable of performing past relevant work as a hospital-admitting clerk/patient representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565) (Hearing Testimony, and Exhibits 2D-9D, 2E, 9E, and 12E).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 23, 2016, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 11, tr., at 13, 15, 19, 20.)

## V. DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the

claimant's residual functional capacity, the claimant can perform his past
relevant work, in which case the claimant is not disabled.
*Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the
claimant's residual functional capacity, as well as his age, education, and work
experience, the claimant can make an adjustment to other work, in which case
the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden
shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d
525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining

whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are

supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399,

405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence"

has been defined as more than a scintilla of evidence, but less than a preponderance of the

evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health &*

*Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a

nature that a reasonable mind might accept it as adequate support for the Commissioner's final

benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*,

667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence,

regardless of whether this court would resolve the issues of fact in dispute differently, or

substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try

the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*,

321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may

examine all the evidence in the record, regardless of whether such evidence was cited in the

Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241,

245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D.

Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII.  ANALYSIS

Britton presents the following legal issues for the court's review:

1.  The ALJ failed to properly evaluate the opinions of the treating sources in violation of 20 C.F.R. § 404.1527.

2.  The ALJ did not properly evaluate Britton's credibility.

3.  The ALJ improperly found that Britton could return to her past job as a hospital admitting clerk/patient representative.

(R. 13, PageID #: 743.)

## A.  Treating Physician Rule

Britton's first allegation of error is that the ALJ failed to properly evaluate the opinions

of the treating sources in violation of 20 C.F.R. § 404.1527.  (R. 13, PageID #: 743, 754-761.)

Britton contends that the ALJ improperly gave little weight to all treating sources.  *Id.* at 755.

She argues that the opinion of treating physician Dr. Sadler should not have been summarily

dismissed because the ALJ found her signature illegible.  *Id.*  Britton also alleges that the ALJ

"erroneously disregarded the findings from Crystal Clinic."  *Id.*  She further complains that the

ALJ gave only partial weight to the consultative examiner Dr. Magleby.  *Id.* at 755-756.

11

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Shields v. Commissioner*, 732 Fed. Appx 430, 437 (6th Cir. 2018); *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often best equipped to provide a complete picture of the individual's health and treatment history.  *Shields*, 732 Fed. Appx at 437; *Blakley*, 581 F.3d at 406; 20 C.F.R. § 404.1527(c)(2).  The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  In other words, treating physicians' opinions are only given deference when supported by objective medical evidence.  *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).  Although the ALJ generally accords more weight to a treating source over those of a non-examining source, for example, the ALJ is not prohibited from adopting the

---

[3]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 404.1527 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.")  Plaintiff's claim was filed before March 27, 2017.

findings of a non-examining source.  *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  *Shields*, 732 Fed. Appx at 437; *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407.  Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  *Shields*, 732 Fed. Appx at 437; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c).  Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision.  *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).  In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion.  *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

1. Dr. Sadler

Britton contends that the ALJ erred by summarily dismissing the opinion of treating physician[4] Dr. Sadler because the ALJ found her signature illegible.  (R. 13, PageID #: 755.)  The ALJ's decision addressed the opinion in question as follows:

---

[4]  The Commissioner's claim that Dr. Sadler is not a treating source because she only saw Britton once (R. 14, PageID #: 777) is incorrect.  The medical evidence of record indicates that Dr.

> I assign little weight to the "physician's" opinion (Exhibit 7F).  An opinion was provided by someone working at Rittman Family Practice, who signed their name above the "Physician's signature" line.  However, the signature is illegible.  Also, there are no credentials, such as M.D. or D.O., which follow the signature.  Thus, it is unclear who provided the opinion and whether that person is an acceptable medical source or not.  Nevertheless, the opinion merits only little weight even if an acceptable medical source and treating source provided the opinion.  A review of the entire opinion reveals many inconsistencies within the opinion.  For instance, the person opined that the claimant can only stand/walk for less than 2 hours and can never twist, but also opined that the claimant has absolutely no restrictions on any hazards.

(R. 11, tr., at 18.)

Britton argues that, even if the ALJ found the signature to be illegible, a review of the medical records reveals that Britton was treating with Dr. Amy Sadler of Rittman Family Practice in this time frame, and in light of the MER, the signature on the form is "clearly hers." (R. 13, PageID #: 755, 758.)  While it would have been preferable to have a printed name below the signature line, the court concurs that, in light of the evidence of record that Britton was treating with Dr. Sadler at Rittman, *see, e.g.*, tr., at 383, 387-388, 400-402 (MER dated May-June 2016), the court reads the signature to be that of Dr. Amy Sadler.  *See* R. 11, tr., at 413.

Moreover, counsel for the claimant submitted a pre-hearing statement, which the ALJ indicated he had received (R. 9, tr., at 66-67), and that statement identified a treating source opinion at Exhibit 7F (*i.e.*, tr., at 410-413).  (R. 9, tr., at 66-67, 281.)  The ALJ did not attempt to clarify any purported ambiguity concerning counsel's pre-hearing statement, or the treating source opinion identified therein, during the hearing.  In addition, during the hearing, counsel referred to Dr. Sadler's statement that claimant needed to change positions and move around.

---

Sadler was treating and/or monitoring the claimant's medical conditions as early as April 2015. *See, e.g.*, tr., at 322, 329, 343, 349, 356, 383, 387-388, 400-402, 410-413.

14

(R. 9, tr., at 99-100; *compare* R. 9, tr., at 413 (medical opinion: claimant would need to change positions).)  But even if the ALJ was unable to decipher Dr. Sadler's signature, the ALJ should have clarified the identity of the medical source at the hearing, particularly given counsel's pre-hearing statement that identified a treating source opinion.  (R. 9, tr., at 66-67, 281.)  *See generally Ferguson v. Commissioner*, 628 F.3d 269, 273 n.2 (6th Cir. 2010) (evidence from treating physician containing ambiguity requires clarification); *Maes v. Astrue*, 522 F.3d 1093, 1097-1098 (10th Cir. 2008) (ALJ's duty to clarify evidence); *Morgan v. Colvin*, 68 F. Supp. 3d 1351, 1356-1357 (D. Colo. 2014) (duty of ALJ to clarify where treating source record contains ambiguity); *Pullum v. Astrue*, 675 F. Supp. 2d 299, 313 (W.D.N.Y. 2009) (ALJ has duty to develop complete medical record); *Rivera v. Barnhart*, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)) (ALJ has obligation to fully develop the record); *Ynocencio v. Barnhart*, 300 F. Supp. 2d 646, 657 (N.D. Ill. 2004) (ALJ's duty to develop full and fair record; ALJ must clarify ambiguity in medical source record).

In any event, despite the purported ambiguity concerning the signature, the ALJ further stated that "the opinion merits only little weight even if an acceptable medical source and treating source provided the opinion."  (R. 11, tr., at 18.)  The claimant contends that the ALJ's failure to give good reasons for discounting this opinion should result in remand.  (R. 13, PageID #: 758.)  Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations, namely: the length, frequency, nature, and extent of the treating relationship, as well as the doctor's area of specialty and the degree to which the opinion is

consistent with the record as a whole and is supported by relevant evidence.  *Shields*, 732 Fed. Appx at 437; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c).

Here, the ALJ addressed the consistency factor, finding "many inconsistencies within the opinion," although he pointed to but a single one: "the person opined that the claimant can only stand/walk for less than 2 hours and can never twist, but also opined that the claimant has absolutely no restrictions on any hazards."  (R. 11, tr., at 18.)  The ALJ's decision, however, fails to explain the reasoning; and the court does not view the lack of restrictions on hazards to be inconsistent with limitations arising from lower back pain.  A person with lower back pain may reasonably be restricted from twisting, and may require the ability to change positions, without necessarily having to avoid hazards such as unprotected heights or moving machinery.  The court does not find the ALJ's reliance on a single example of a single Section 1527 factor to constitute good reason to reject the treating physician's opinion.

Reversal is required in this case because the ALJ failed to apply the treating source doctrine.  *Shields*, 732 Fed. Appx at 438.  The medical evidence of record shows that Dr. Sadler was one of Britton's treating physicians at Rittman Family Practice.  *See, e.g.*, R. 11, tr., at 383, 387-388, 400-402; see also tr., at 99-100.  Dr. Sadler's opinion therefore "should have been accorded controlling weight absent (1) sufficiently specific reasons for discounting it and (2) a precise explanation of how those reasons lead to that conclusion."  *Shields*, 732 Fed. Appx at 438 (citing  *Rogers*, 486 F.3d at 243).  Although the ALJ stated that "the opinion merits only little weight even if an acceptable medical source and treating source provided the opinion" (R. 11, tr., at 18), the underlying decision failed to support that conclusion with the analysis that is to be accorded to every medical opinion.  20 C.F.R. § 404.1527(c).

16

The court, however, expresses no opinion regarding the appropriate weight to assign to such opinion, but recommends remand to enable the Commissioner to further assess the opinion and more fully articulate the rationale for its assessment.

### 2. Crystal Clinic

Britton also alleges that the ALJ "erroneously disregarded the findings from Crystal Clinic." (R. 13, PageID #: 755.) She claims that "[t]he notation that Britton was unable to return to work was not only reported by her orthopedic surgeon, but Crystal Clinic was also her employer." *Id.* The Commissioner's brief asserts that this argument lacks factual and legal support, constituting an undeveloped argument that is waived. (R. 14, PageID# 781). Although Britton's brief asserts the record contains a notation that she attributes to her surgeon indicating she "was unable to return to her past work," she does not cite where the Crystal Clinic records show that her orthopedic surgeon or anyone else at Crystal Clinic reached that conclusion. (R. 13, PageID #: 755.) Earlier in her brief's factual section, Britton does contend that "it was opined that she was unable to return to her work as a nurse as she was unable to sit or stand for an extended period of time." *Id.* at 748 (citing R. 11, tr. at 621 (17F/28)). Conspicuously absent from Britton's brief, however, is a statement attributing this unable-to-return-work opinion to a specific person at Crystal Clinic or a developed argument asserting how the ALJ erred when considering Crystal Clinic records.[5] Further, Briton's Reply brief does not respond to the

---

[5] The court's review of the underlying record indicates that the unable-to-return to work statement is found in records signed by CNP Kathleen Opsitnick. (R. 11, tr., at 507, 622). Britton's brief does not assert that the ALJ erred when considering any records or opinions attributed to CNP Opsitnick; and, therefore, any such argument is waived. Further, to the extent that Britton seeks to attribute the unable-to-work statement to her orthopedic surgeon, Carrie A. Diulus, M.D., such assertion is belied by the record. The "Sameday Surgery Homegoing

defendant's assertion that this argument lacks factual and legal support and is thereby waived.

Therefore, these "issues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.  It is not sufficient for a party to mention a

possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

### 3.  Dr. Magleby

The final error alleged as violative of the treating source rule pertains to Dr. Magleby's

opinion.  Britton asserts that the ALJ erred by giving only partial weight to the consultative

examiner Dr. Magleby.  (R. 13, PageID #: 754, 755-756.)  Britton's argument rests on a flawed

premise, however.  Dr. Magleby is not a treating physician, as defined in the treating source rule.

A treating physician is defined as a physician (or psychologist) who has provided medical

treatment or evaluation, and who has an "ongoing treatment relationship" with the patient.

*Daniels v. Commissioner*, No. 04-5709, 2005 WL 2739084, at *5 (6th Cir. Oct. 24, 2005) (citing

20 C.F.R. § 404.1502); *Bryant v. Astrue*, No. 2:09-00093, 2010 WL 2901842, at *2 (M.D. Tenn.

July 19, 2010) (citing 20 C.F.R. § 416.902).

The Sixth Circuit has found that the treating physician relationship cannot arise from a

single visit:

> The treating physician doctrine is based on the assumption that a medical
> professional who has dealt with a claimant and his maladies over a long period of

---

Instructions," dated September 1, 2017, indicated that she may return to work.  (R. 11, tr., at 597
(17F/4).).  Although the ALJ's decision found the signature on this record illegible, the doctor's
signature on the "Sameday Surgery Homegoing Instructions" is consistent with several other
signatures on other paperwork filled out on September 1, 2017.  *Compare* R. 11, tr., at 597, with
tr., at 600, 601 ("Surgeons: Diulus, MD, Carrie" with matching physician signature), 602, 603
("Surgeon's printed name: C. Diulus" with matching surgeon signature).

time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records. *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here. Dr. Ruff's report was entitled to no special degree of deference. *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989).

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See also Smith*, 482 F.3d at 876 (doctor examined claimant only once, which fails to evince ongoing treatment relationship contemplated by regulation) (citing *Daniels v. Apfel*, No. 00-5009, 2000 WL 1761087, at *2 (10th Cir. 2000)).

Psychologist Dr. Magleby conducted a single psychological consultative examination with Britton. (R. 11., tr., at 369-374.) There is no indication in the record that Dr. Magleby had a treating relationship with Britton, and Briton's filings have not shown otherwise. Therefore, the psychologist's evaluation was not entitled to special deference under the treating source rule; and Britton's alleged error on that basis (R. 13, PageID #: 743, 754, 755-756) lacks merit.

B.  Credibility

Britton contends that the ALJ did not properly evaluate her credibility. (R. 13, PageID #: 743, 761-763.) She argues that the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Britton's testimony was credible. *Id.* at 763.

The ALJ recognized that Britton suffered from depression, but he determined that her depression was a "slight abnormality" that does not have more than a minimal effect on her ability to perform basic work activities. (R. 11, tr., at 14.) In reaching that conclusion, the ALJ considered the four broad areas from the pertinent regulations for evaluating her depressive disorder and adjustment disorder. *Id.* The ALJ determined that Britton has no limitation in the area of understanding, remembering, or applying information; no limitation in the area of

interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and, a mild limitation in adapting or managing oneself. *Id.* The underlying decision reviewed Britton's ability to perform daily activities, and acknowledged that she was diagnosed with depressive disorder and adjustment disorder by the consultative psychologist. *Id.* The medical record demonstrated that Britton was not participating in any mental health treatment, and her primary care physician prescribed her medications. *Id.* Because her medically determinable mental impairments cause no more than mild limitation in any of the functional areas, the ALJ concluded that they are non-severe. *Id.*

Britton contends that the ALJ substituted his own medical judgment for the medical evidence. (R. 13, PageID #: 763.) Although Britton argues that the ALJ did not properly evaluate the medical evidence, she merely refers to her testimony that "she had some good days and some that were not good," and that she was crying three or four times a week. *Id.,* citing R. 11, tr., at 82. She also testified that Celexa was helping to improve her depression; and, that her doctor has never suggested referring her to a counselor, a therapist, or other mental health specialist. (R. 11, tr., at 82.) Britton also testified about issues with her concentration. *Id.* at 88-89. She asserts that the ALJ disregarded that evidence and evidence that she was depressed. (R. 13, PageID #: 763.)

The consultative psychologist Dr. Magleby's functional assessment determined that claimant's ability to understand, remember, and carry out simple or complex instructions was average, her comprehension was good, and memory appeared average. (R. 11, tr., at 373.) Her ability to maintain attention and pace, and the ability to perform simple or multi-step tasks appeared fairly average. *Id.* at 374. Dr. Magleby opined that her ability to withstand the mental

stress and pressures of daily work activity appeared somewhat impaired by persistent depression. *Id.* The ALJ specifically quoted that finding in the decision, although noting that it was based on claimant's subjective complaints. (R. 11, tr., at 17-18.) Further, the ALJ accorded Dr. Magleby's opinion partial weight and found it consistent with no-to-mild limitations of understanding, remembering or applying information, interacting with others, and concentrating, persisting, or maintaining pace. *Id.* at 18.

Britton's contention that the ALJ "disregarded any evidence" that she was depressed is simply inaccurate. The ALJ recognized that condition at several points in the decision, but he found that because it caused no more than mild limitation in any of the functional areas, it was non-severe. *Id.* at 14. The court finds that the ALJ's decision on this issue is supported by substantial evidence in the record.

## C. Return to Past Work

Britton's final assignment of error asserts that the ALJ improperly found that she could return to her past job as a hospital admitting clerk/patient representative. (R. 13, PageID #: 743, 763-765.) The ALJ found that the demands of Britton's past relevant work "do not exceed the sedentary residual functional capacity in regards to the sedentary and semi-skilled job as a hospital admitting clerk/patient representative." (R. 11, tr., at 19.)

In determining whether a claimant can return to past relevant work, the ALJ must relate the demands of that work to the claimant's current physical abilities. *See, e.g.*, *Baker v. Astrue*, No. 1:11CV1096, 2012 WL 4322607, at *3 (N.D. Ohio Sept. 20, 2012). Whether the claimant retains the functional capacity to perform past work "has far-reaching implications and must be developed and explained fully in the disability decision." *Baker*, 2012 WL 4322607, at *4

(quoting SSR 82-62).  Because this may be a controlling issue, the ALJ must consider evidence that resolves the issue as clearly and explicitly as circumstances permit.  *Id.*  Since the court is recommending remand for a fuller consideration of the opinion of Dr. Sadler, which may impact the ALJ's RFC determination, the court will not address the third assignment of error at this point.

## VIII.  CONCLUSION

The undersigned finds that the Commissioner's final decision should be reversed and remanded for further consideration.  The case should be remanded for a more thorough evaluation of the opinion of the treating physician Dr. Sadler.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  January 2, 2020

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72(a); LR 72.3(a). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).